PAUL L. REIN, Esq. (SBN 43053)
CELIA MCGUINNESS, Esq. (SBN 159420)
CATHERINE M. CABALO, Esq. (SBN 248198)
LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:   510/832-4787
reinlawoffice@aol.com

BRIAN GEARINGER, Esq. (SBN 146125)
GEARINGER LAW GROUP
825 Van Ness Ave., 4th Floor
San Francisco, CA 94109-7891
Telephone:  415/440-3175
Facsimile:   415/440-3103
brian@gearingerlaw.com

Attorneys for Plaintiff: ROLANDA TAYLOR


* List of Defendants and their respective counsel listed after the caption.


IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| ROLANDA TAYLOR,<br><br>        Plaintiff,<br><br>v.<br><br>BARNES AND NOBLE<br>BOOKSELLERS, INC.; CITY OF<br>OAKLAND, A MUNICIPAL<br>CORPORATION ACTING BY AND<br>THROUGH ITS BOARD OF PORT<br>COMMISSIONERS; CEP-JLS I LLC;<br>AND DOES 1-10, INCLUSIVE,<br><br>        Defendants.<br>_____/ | CASE NO. C09-4490 CRB<br>Civil Rights<br><br><br><br>**SETTLEMENT AGREEMENT<br>AND [~~PROPOSED~~] ORDER AS<br>TO PLAINTIFF'S INJUNCTIVE<br>RELIEF CLAIMS *ONLY*** |

DAVID L. ALEXANDER (SBN 059069) PORT ATTORNEY
MARY RICHARDSON (SBN 208586) DEPUTY PORT ATTORNEY
PORT OF OAKLAND
530 Water Street, 4th Floor
Oakland, CA 94607
Telephone: (510) 627-1346
dalexander@portoakland.com
mrichardson@portoakland.com

Attorneys for Defendant:
CITY OF OAKLAND, a municipal corporation
by and through its Board of Port Commissioners

MARY KAY GLASPY, Esq. (SBN 157167)
KEVIN M. CLARKE, Esq. (SBN 114711)
LAW OFFICES OF GLASPY & GLASPY, INC.
One Walnut Creek Center
100 Pringle Avenue, Suite 750
Walnut Creek, CA 94596
Telephone: (925) 947-1300
Facsimile: (925) 947-1594
kclarke@glaspy.com

Attorneys for Defendant:
CITY OF OAKLAND, a municipal corporation
by and through its Board of Port Commissioners,
and CEP-JLS I LLC

1.     Plaintiff Rolanda Taylor filed a Complaint in this action on September 23,

2009, to obtain recovery of damages for her discriminatory experiences, denial of

access, and denial of her civil rights, and to enforce provisions of the Americans

with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and

California civil rights laws against Defendants CITY OF OAKLAND, a

municipal corporation by and through its Board of Port commissioners, and CEP-

JLS I LLC, relating to the condition of Defendants' public accommodations as of

May 23, 2008, and continuing.  Plaintiff has alleged that Defendants violated

Title II of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California

Civil Code, and sections 19955 *et seq.* of the California Health & Safety Code by

failing to provide full and equal access to their facilities at 98 Broadway,

Oakland, California.

    2.    Defendants deny the allegations in the Complaint.  The parties

hereby enter into this Settlement Agreement and Order for the purpose of

resolving injunctive relief aspects of this lawsuit only, without the need for

protracted litigation.

**JURISDICTION:**

    3.    The parties to this Settlement Agreement agree that the Court has

jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged

violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections

12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of

California Health & Safety Code sections 19955 *et seq.*; Title 24, California Code

of Regulations; and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

    4.    In order to avoid the costs, expense, and uncertainty of protracted

litigation, the parties to this Settlement Agreement agree to entry of this Order to

resolve all claims regarding injunctive relief raised in the Complaint filed with

this Court.  Accordingly, they agree to the entry of this Order without trial or

further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief.

WHEREFORE, the parties to this Settlement Agreement hereby agree and stipulate to the Court's entry of this Settlement Agreement and Order, which provides as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5. This Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject Complaint.

6. The parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and Americans with Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to in this Settlement Agreement and Order.

   a) **Remedial Measures:** Defendants agree to perform corrective work at 98 Broadway, Oakland, California. The scope of the corrective work agreed upon by the parties is described in **Attachment "A"**, attached to this Settlement Agreement.

   b) **Timing of Injunctive Relief**: Defendants will make their

best efforts to do all corrective work in the following priority order: 1) Lifts (only if opened to public use); 2) Parking, paths of travel to parking, valet booth counters and ATM; 3) Public restrooms; 4) Ramps and handrails. Defendants will complete all corrective work within one year. (Any restrooms closed off to the public will not have to meet this schedule). In the event that unforeseen difficulties prevent Defendants from completing any of the agreed-upon injunctive relief, Defendants or their counsel will notify Plaintiff's counsel in writing within 15 days of discovering the delay. Defendants or their counsel will notify Plaintiff's counsel when the corrective work is completed, and in any case will provide a status report no later than 120 days from the entry of this Settlement Agreement.

   c)   Defendants will notify Plaintiff in writing at the end of 120 days as to the current status of agreed to injunctive relief, and every 90 days thereafter until all access is provided.

   d)   If Plaintiff contends that any or some portion of the corrective construction work to be completed under this Settlement Agreement has not been performed in compliance with the standards set forth in Paragraph 6 herein, Plaintiff will provide written notice to Defendants and their counsel detailing in what respects Plaintiff contends the premises are not compliant. Within 14 calendar days of receiving this notice, Defendants will respond to this notice. If

the parties are not able to agree upon a course of action, they will hold a meet and confer within 30 calendar days of Plaintiff's written notice and will use their best efforts to resolve the dispute informally.  If the parties are still not able to agree, they will submit the matter to the judge then assigned to the case for determination.

If Plaintiff alleges that Defendants failed to provide injunctive relief on the agreed to timetable and/or fail to provide timely written status notification, and Plaintiff files a motion with the Court to obtain compliance with these terms, Plaintiff reserves the right to seek additional attorney fees for all compliance work necessitated by the alleged failures.

## DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:

7.    The parties agree that this Settlement Agreement is a resolution of Plaintiff's claim for injunctive relief only, and that it does not pertain to Plaintiff's claims for damages, attorney fees, litigation expenses and costs.

## ENTIRE SETTLEMENT AGREEMENT AND ORDER:

8.    This Settlement Agreement and Order constitute the entire agreement between the signing parties on the matters of injunctive relief, and no other statement, promise or agreement, either written or oral, made by any of the

parties or agents of any of the parties that is not contained in this written Settlement Agreement and Order shall be enforceable regarding the matters of injunctive relief described herein.  This Settlement Agreement and Order applies to Plaintiff's claims for injunctive relief only and does not resolve Plaintiff's claims for damages, attorney fees, litigation expenses and costs.

**SETTLEMENT AGREEMENT AND ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

9.     This Settlement Agreement and Order shall be binding on Plaintiff ROLANDA TAYLOR; Defendants CITY OF OAKLAND, a municipal corporation by and through its Board of Port Commissioners, and CEP-JLS I LLC; and any successors in interest.  The parties have a duty to so notify all such successors in interest of the existence and terms of this Settlement Agreement and Order during the period of the Court's jurisdiction of this Settlement Agreement and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

10.     Each of the parties to this Settlement Agreement understands and agrees that there is a risk and possibility that, subsequent to the execution of this

Settlement Agreement, any or all of them will incur, suffer or experience some further loss or damage with respect to the lawsuit which are unknown or unanticipated at the time this Settlement Agreement is signed.  Except for all obligations required in this Settlement Agreement, the parties intend that this Settlement Agreement apply to all such further loss with respect to the lawsuit, except those caused by the parties subsequent to the execution of this Settlement Agreement.  Therefore, except for all obligations required in this Settlement Agreement, this Settlement Agreement shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Settlement Agreement with respect to the lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived.  Section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER  MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

This waiver applies to the injunctive relief aspects of this action only and does not

include resolution of Plaintiff's claims for damages, attorney fees, litigation expenses and costs.

11.    Except for all obligations required in this Settlement Agreement, and exclusive of the referenced claims for damages, statutory attorney fees, litigation expenses and costs, each of the parties to this Settlement Agreement, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges each other Party and all officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with the lawsuit.

**TERM OF THE SETTLEMENT AGREEMENT AND ORDER:**

12.    This Settlement Agreement and Order shall be in full force and effect for a period of eighteen (18) months after the date of entry of this Settlement Agreement and Order, or until the injunctive relief contemplated by this Order is completed, whichever occurs later.  The Court shall retain jurisdiction of this action to enforce provisions of this Order for 18 months after the date of this Settlement Agreement, or until the injunctive relief contemplated

by this Order is completed, whichever occurs later.

**SEVERABILITY:**

13.   If any term of this Settlement Agreement and Order is determined by any court to be unenforceable, the other terms of this Settlement Agreement and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

14.   Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Settlement Agreement and Order, except that the agreement on behalf of the City of Oakland, a municipal corporation by and through its Board of Port Commissioners, is subject to approval by the Board of Port Commissioners.  This Settlement Agreement and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

Dated: X 11/19, 2010          PLAINTIFF ROLANDA TAYLOR

ROLANDA TAYLOR

Dated: _____, 2010     DEFENDANT CEP-JLS I LLC

By: _____

Print name:    MELINDA ELLIS EVERS
/Managing Member

Title: _____


Dated: _____, 2010     DEFENDANT CITY OF OAKLAND, a
municipal corporation by and through its Board
of Port Commissioners



By: _____

Print name:_____

Title:_____


APPROVED AS TO FORM:

Dated: **Nov 18**, 2010     LAW OFFICES OF PAUL L. REIN
GEARINGER LAW GROUP

_____

By PAUL L. REIN, Esq.
Attorneys for Plaintiff
ROLANDA TAYLOR

-11-

Dated: _____, 2010          DEFENDANT CEP-JLS I LLC

                               By: _____

                               Print name: _____

                               Title: _____


Dated: 11/22, 2010             DEFENDANT CITY OF OAKLAND, a
                               municipal corporation by and through its Board
                               of Port Commissioners


                               By: _____

                               Print name: Omar R. Benjamin

                               Title: Executive Director


APPROVED AS TO FORM:

Dated: Nov 18, 2010            LAW OFFICES OF PAUL L. REIN
                               GEARINGER LAW GROUP


                               _____
                               By PAUL L. REIN, Esq.
                               Attorneys for Plaintiff
                               ROLANDA TAYLOR

Dated: _____, 2010      DEFENDANT CEP-JLS I LLC

By: _____

Print name:_____

Title: _____

Dated: _____, 2010      DEFENDANT CITY OF OAKLAND, a municipal corporation by and through its Board of Port Commissioners

By: _____

Print name:_____

Title:_____

APPROVED AS TO FORM:

Dated: _Nov 18_, 2010      LAW OFFICES OF PAUL L. REIN
GEARINGER LAW GROUP

_____
By PAUL L. REIN, Esq.
Attorneys for Plaintiff
ROLANDA TAYLOR

Dated: 11/22, 2010  PORT OF OAKLAND

By DAVID L. ALEXANDER, Esq.
PORT ATTORNEY
MARY RICHARDSON, Esq.
DEPUTY PORT ATTORNEY
Attorneys for Defendant
CITY OF OAKLAND, a municipal corporation
by and through its Board of Port Commissioners

PA# 10-263

Dated: 11/19, 2010  LAW OFFICES OF GLASPY & GLASPY, INC.

By KEVIN M. CLARKE, Esq.
Attorneys for Defendants
CITY OF OAKLAND, a municipal corporation
by and through its Board of Port Commissioners
and CEP-JLS I LLC

## ORDER

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

Dated: _____, 2010

Honorable Charles R. Breyer

-12-

Dated: _____, 2010      PORT OF OAKLAND

_____

By DAVID L. ALEXANDER, Esq.
PORT ATTORNEY
MARY RICHARDSON, Esq.
DEPUTY PORT ATTORNEY
Attorneys for Defendant
CITY OF OAKLAND, a municipal corporation
  by and through its Board of Port Commissioners

Dated: 11/19, 2010      LAW OFFICES OF GLASPY & GLASPY, INC.

_____

By KEVIN M. CLARKE, Esq.
Attorneys for Defendants
CITY OF OAKLAND, a municipal corporation
  by and through its Board of Port Commissioners
and CEP-JLS I LLC

**ORDER**

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

Dated: _February 22_, 2010      Honor...



Judge Charles R. Breyer

IT IS SO ORDERED

-12-

# Attachment "A" to Settlement Agreement and Order

Taylor v. Barnes and Noble Booksellers, Inc., et al C09-4490 CRB

1. Parking Structure

    a. Signage at entrance to structure

        i. Provide a sign at each entrance to the parking structure, or at the end of each designated accessible parking space, which informs individuals that parking illegally in designated accessible parking spaces may result in having their car towed. In addition, the sign must give individuals the location and phone number where their towed vehicles may be retrieved.

    b. Number of Parking Spaces:

        i. Make an accurate count of the entire parking lot, including any designated accessible parking spaces and provide a number of fully compliant accessible parking spaces in the lot equal to the number required in the following chart: NOTE: The calculation of the number of designated accessible spaces is based on the total number of spaces provided in each separate parking lot, not by adding the spaces in the two parking lots together.  Defendant will paint "NO PARKING" in 12-inch high white letters in all disabled parking space access aisles.

### TABLE 11B-6 — SPACES REQUIRED
**Establishes the number of accessible parking spaces required.**

| TOTAL NUMBER OF PARKING SPACES IN LOT OR GARAGE | MINIMUM REQUIREDNUMBER OF SPACES |
|:---:|:---:|
| 1–25 | 1 |
| 26–50 | 2 |
| 51–75 | 3 |
| 76–100 | 4 |
| 101–150 | 5 |
| 151–200 | 6 |
| 201-300 | 7 |
| 301-400 | 8 |
| 401-500 | 9 |

501-1000 1001 and over      2 percent of total 20 plus 1 for
each 100 over 1000

     ii.    Number of Van Accessible Parking Spaces: Defendant will provide van accessible parking.

  c.    Path of travel between entrance to Lot and Accessible Parking spaces

     i.    Reconfigure the entire path of travel so the maximum cross slope along the entire length does not exceed 2% at any point.

     ii.    Defendant will provide a compliant accessible route to all existing designated accessible parking spaces.

  d.    Configuration of Parking Spaces:

     i.    Standard Parking Space #1

        (1)    Path of Travel to Facilities on Site

           (a)    provide a compliant accessible route between the designated Accessible parking spaces and the existing elevator.

        (2)    Parking Space

           (a)    Length and width: provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining unloading zone that is a minimum of 5' wide.

        (3)    Unloading Zone

           (a)    Provide an unloading zone, which is a minimum of 5' wide by 18' long and has an adjoining parking space that is a minimum of 9' wide.

     ii.    Standard Parking Space #2

        (1)    Path of Travel to Facilities on Site

           (a)    Designated Accessible Route: defendant will provide a compliant accessible route between the designated Accessible parking spaces and the existing elevator.

(2)   Parking Space

    (a)   Length and Width: Provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining unloading zone that is a minimum of 5' wide.

(3)   Unloading Zone:

    (a)   Provide an unloading zone, which is a minimum of 5' wide by 18' long and has an adjoining parking space that is a minimum of 9' wide.

iii.   Standard Parking Space #3

(1)   Path of Travel to Facilities on Site

    (a)   Designated Accessible Route: Defendant will provide a compliant accessible route between the designated Accessible parking spaces and the existing elevator

(2)   Parking Space:

    (a)   Length and Width: Provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining unloading zone that is a minimum of 5' wide.

(3)   Unloading Zone:

    (a)   Provide an unloading zone, which is a minimum of 5' wide by 18' long and has an adjoining parking space that is a minimum of 9' wide.

iv.   Standard Parking Space #4

(1)   Parking Space

    (a)   Length and Width: Provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining unloading zone that is a minimum of 5' wide.

(2)   Unloading Zone:

    (a)   Length and Width: Provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining

unloading zone that is a minimum of 5' wide.

    v.    Standard Parking Space #5

        (1)    Parking Space

            (a)    Length and Width: Provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining unloading zone that is a minimum of 5' wide.

        (2)    Unloading Zone:

            (b)    Length and Width: Provide a parking space, which is a minimum of 9' wide by 18' long and has an adjoining unloading zone that is a minimum of 5' wide.

2.    Plaza Elements Serving Building:

    a.    Patelco Credit Union ATM Machine

        i.    Height of Writing Counter

            (1)    either eliminate existing counter or provide a compliant counter.

    b.    Valet Cashier Booth

        i.    Height of Counter

            (1)    Provide a lower section of counter that has a maximum height of 34" above the finished floor and a minimum length of 36".

    c.    Drinking Fountains

        i.    Drinking Fountain Adjacent to Valet Booth on West Side of Building

            (1)    Water Spout location: Defendant will replace the existing drinking fountain with a Code-compliant Hi-Lo drinking fountain.

        ii.    Alcove

            (1)    Install cane detection rails.

d.   Drinking Fountain Adjacent to Garage Entrance on East Side of Building

    i.   Hi-Lo Unit

        (1)   Water Spout location: Defendant will replace the existing drinking fountain with a Code-compliant Hi-Lo drinking fountain.

    ii.   Alcove

        (1)   Install cane detection rail on right side of drinking fountain (left Side is protected by existing planter).

e.   Stairways:

    i.   Stairway From Upper Plaza on South Side of Building to Intermediate Level

        (1)   Handrails: Provide fully complying handrails on both sides of this stairway.

f.   Ramps:

    i.   Ramp at southwest corner of building

        (1)   Vertical rise: grind concrete so that ramp landing and pavers are flush and aligned.

g.   Landings:

    i.   Intermediate Landing

        (1)   Handrail At Bottom of Ramp Run:  Modify bottom handrail extension on the east side so as to extend a minimum of 12" beyond the bottom of ramp run. Requires turning horizontal extension 90°.

        (2)   Handrail At Top of Ramp Run: Modify top handrail extension on the east side so as to extend a minimum of 12" beyond the top of the ramp run. Requires turning horizontal extension 90°.

h.   Handrails:

    i.   STANCHIONS

        (1)   Defendant agrees to replace or modify all identified handrails on

the site to eliminate stanchion danger.

   ii.    Ramp at Northwest Corner of the Building
Defendants shall post a sign at this exit, inside the building, directing mobility impaired persons to the ADA accessible exits at the front of the building.  At the bottom of the ramp, outside the building, a sign will be posted saying, "No access," so that mobility impaired persons do not mistakenly use it as a point of access to the building.

   iii.    Ramp at Northeast Corner of the Building
Defendants shall post a sign at this exit, inside the building, directing mobility impaired persons to the ADA accessible exits at the front of the building.  At the bottom of the ramp, outside the building, a sign will be posted saying, "No access," so that mobility impaired persons do not mistakenly use it as a point of access to the building.

   iv.    Ramp from Lower Plaza to Bookstore Level at Southeast Corner of Building:
Defendants will install signage that indicates that this ramp is not accessible and that directs people to the accessible southwest ramp. The sign will contain the I.S.A. suggested sign language:  "THIS RAMP IS NOT ACCESSIBLE. USE THE RAMP LOCATED AT THE SOUTHWEST SIDE OF THE PLAZA."

   v.    Ramp from Bookstore Plaza to Reading Room at Southeast Corner of Building:
Defendants will take the reading room out of public use and chain off the ramp and stairs.  If the reading room is used by future tenant, then the ramp will be made fully accessible.

i.    Men's Restrooms at West End of Building Adjacent to Valet Kiosk

   i.    Entry Door:

      (1)    Signage: Install a fully compliant ADA sign including raised characters and Grade No. 2 Braille on the latch side on the exterior side of the door, centered at a height of 60" above the finished floor or relocate the ADA sign so that it is centered at a height of 60" above the finished floor; also install a clearly contrasting equilateral triangle that is exactly 12" on each side on the bathroom door in this location at a height of 60" on center above the finished floor.

      (2)    Strike Edge Clearance:  install power operator on door as

equivalent facilitation.

    (3)    Door Landing:  relocate hand dryers outside of required clear space.

  ii.    Sink

    (1)    Kneespace: Relocate or replace the existing fixture to provide knee space underneath that has a minimum height of 29" above the finished floor at the front face of the fixture and 27" above the finished floor 8" back from the front face.

    (2)    Insulation: Provide insulation on the hot water feed and drain pipe underneath this sink, so individuals using wheelchairs or other mobility assistive devices do not burn themselves on these hot items.

    (3)    Pressure valve type: Recalibrate the time that this valve remains on when activated for a minimum of 10 seconds or replace the existing hardware with lever-type hardware that does not require grasping, pinching or twisting of the wrist to operate.

  iii.    Urinals:

    (1)    Alcove: relocate urinal screen so that minimum 30 inch clear width is provided.

    (2)    Height of lip: The mounting height of the urinal lip is too high. Consequently, the fixture should be moved down or replaced, so the rim edge is mounted no higher than 17" above the finished floor.

  iv.    Accessible toilet stall:

    (1)    Stall door landing:

        (a)    Defendant will reconfigure the door of the accessible stall so that the closed door is perpendicular to the face of the angled wall, swinging the door out, so that they get a compliant landing on the each side of the door.

    (2)    Self closer:  Provide self-closing hinge(s) on the door to the designated accessible stall.

(3) Toilet: Clear Length: Defendant will reconfigure the door of the accessible stall so that the closed door is perpendicular to the face of the angled wall, swinging the door out, so that they get a compliant landing on the each side of the door.

(4) Flush valve: install infrared operated flush valve.

(5) Toilet Paper Dispenser: Relocate the toilet paper dispenser so it is mounted underneath the grab bar with its leading edge within 12 inches on center of the front face of the toilet, or 36" maximum from the rear wall to its leading edge, whichever is closer to the rear wall, and at a minimum height of 19" to the center of the dispenser above the finished floor. The paper outlet of the dispenser shall be no lower than 15" above the finished floor.

(6) Grab Bars:

    (a) Side grab bar: provide a fully complying grab bar that is a minimum of 42" long, is located 33' above the finished floor to its centerline, positioned so it projects 24" in front of the face of the toilet and a minimum of 54" from the rear wall, and provides knuckle space of exactly 1-1/2".

    (b) Rear grab bar: relocate the grab bar so it is mounted at on the wall behind the toilet at a height of 33" on center above the finished floor.

j.     Women's Restrooms at West End of Building Adjacent to Valet Kiosk

i.     Entry Door:

(1) Signage: Install a fully compliant ADA sign including raised characters and Grade No. 2 Braille on the latch side or the exterior side of the door, centered at a height of 60" above the finished floor or relocate the ADA sign so that it is centered at a height of 60" above the finished floor; also mount a clearly contrasting12" diameter circle on the center of the bathroom door that is centered at a height of 60" above the finished floor.

(2) Push pressure: Adjust or replace the existing door closer, and adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

    ii.    Sink:

        (1)    Height: Relocate or replace the existing fixture to provide knee space underneath that has a minimum height of 29" above the finished floor at the front face of the fixture and 27" above the finished floor 8" back from the front face.

        (2)    P-trap: Reconfigure or replace the p-trap so that it does not encroach into the clear space required under the lavatory.

        (3)    Insulation: Provide insulation on the hot water feed and drain pipe underneath this sink, so individuals using wheelchairs or other mobility assistive devices do not burn themselves on these hot items.

        (4)    Hardware: Recalibrate the time that this valve remains on when activated for a minimum of 10 seconds or replace the existing hardware with lever-type hardware that does not require grasping, pinching or twisting of the wrist to operate.

    iii.    Accessible Toilet Stall

        (1)    Stall Door Landing

            (a)    Defendant will reconfigure the door of the accessible stall so that the closed door is perpendicular to the face of the angled wall, swinging the door out, so that they get a compliant landing on the each side of the door.

        (2)    Self Closer: replace hinge so that door is completely self-closing.

        (3)    Toilet seat height: Replace the toilet with a model that has a seat height of 17" to 19" above the finished floor.

        (4)    Flush valve:  replace flush valve with infrared operated flush valve.

        (5)    Toilet Paper Dispenser:  Relocate the toilet paper dispenser so it is mounted underneath the grab bar with its leading edge within 12 inches on center of the front face of the toilet, or 36" maximum from the rear wall to its leading edge, whichever is closer to the rear wall, and at a minimum height of 19" to the center of the

dispenser above the finished floor. The paper outlet of the dispenser shall be no lower than 15" above the finished floor.

(6) Grab Bars:

(a) Side Grab Bar: Provide a fully complying grab bar that is a minimum of 42" long, is located 33' above the finished floor to its centerline, positioned so it projects 24" in front of the face of the toilet and a minimum of 54" from the rear wall, and provides knuckle space of exactly 1-1/2".

k. Men's Restroom at East End of Building

i. Entry Door

(1) Signage: Install a fully compliant ADA sign including raised characters and Grade No. 2 Braille on the latch side on the exterior side of the door, centered at a height of 60" above the finished floor or relocate the ADA sign so that it is centered at a height of 60" above the finished floor; also install a clearly contrasting equilateral triangle that is exactly 12" on each side on the bathroom door in this location at a height of 60" on center above the finished floor.

(2) Push pressure: Adjust or replace the existing door closer and adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

ii. Sink:

(1) Kneespace:

(a) Height: Relocate or replace the existing fixture to provide knee space underneath that has a minimum height of 29" above the finished floor at the front face of the fixture and 27" above the finished floor 8" back from the front face.

(b) P-trap: Reconfigure or replace the p-trap so that it does not encroach into the clear space required under the lavatory.

(2) Insulation: Provide insulation on the hot water feed and drain pipe underneath this sink, so individuals using wheelchairs or other mobility assistive devices do not burn themselves on these hot

items.

       (3)    Hardware: Recalibrate the time that this valve remains on when activated for a minimum of 10 seconds or replace the existing hardware with lever-type hardware that does not require grasping, pinching or twisting of the wrist to operate.

iii.    Urinals:

       (1)    Height of lip: relocate the urinal so that the rim edge is mounted no higher than 17" above the finished floor.

       (2)    Projection from wall: Replace this fixture with one that projects a minimum of 14" off of the rear wall, as required by the code.

iv.    Accessible Toilet Stall:

       (1)    Self-closer: Provide an automatic self closer on the door to the designated accessible stall.

       (2)    Replace the existing hardware with lever-type hardware that does not require grasping, pinching or twisting of the wrist to operate.

       (3)    Toilet Paper Dispenser:  Relocate the toilet paper dispenser so it is mounted underneath the grab bar with its leading edge within 12 inches on center of the front face of the toilet, or 36" maximum from the rear wall to its leading edge, whichever is closer to the rear wall, and at a minimum height of 19" to the center of the dispenser above the finished floor.  The paper outlet of the dispenser shall be no lower than 15" above the finished floor.

       (4)    Grab Bars:

           (a)    Side Grab Bar: Provide a fully complying grab bar that is a minimum of 42" long, is located 33' above the finished floor to its centerline, positioned so it projects 24" in front of the face of the toilet and a minimum of 54" from the rear wall, and provides knuckle space of exactly 1-1/2".

           (b)    Rear Grab Bar:  Relocate the grab bar so it is mounted at on the wall behind the toilet at a height of 33" on center above the finished floor.

(5)     Relocate the sanitary seat cover dispenser so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the centerline of the highest operable mechanism.

p.     Women's Restroom at East End of Building

    i.     Entry Door

       (1)     Signage: Install a fully compliant ADA sign including raised characters and Grade No. 2 Braille on the latch side or the exterior side of the door, centered at a height of 60" above the finished floor or relocate the ADA sign so that it is centered at a height of 60" above the finished floor; also mount a clearly contrasting 12" diameter circle on the center of the bathroom door that is centered at a height of 60" above the finished floor.

       (2)     Push pressure: Adjust or replace the existing door closer and adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

    ii.     Sink

       (1)     Kneespace

          (a)     Relocate or replace the existing fixture to provide knee space underneath that has a minimum height of 29" above the finished floor at the front face of the fixture and 27" above the finished floor 8" back from the front face.

          (b)     P-trap: Reconfigure or replace the p-trap so that it does not encroach into the clear space required under the lavatory.

       (2)     Insulation: Provide insulation on the hot water feed and drain pipe. underneath this sink.

       (3)     Pressure valve type: Recalibrate the time that this valve remains on when activated for a minimum of 10 seconds or replace the existing hardware with lever-type hardware that does not require grasping, pinching or twisting of the wrist to operate.

       (4)     Pressure valve type: Defendant agrees to adjust push pressure of faucets to no more than 5 lbs. and to recalibrate the time that this valve remains on when activated for a minimum of 10 seconds or

replace the existing hardware with lever-type hardware that does not require grasping, pinching or twisting of the wrist to operate.

iii. Soap Dispenser: Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the highest operable mechanism.

iv. Used Needle Box: Relocate this item so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the highest operable mechanism.

v. Accessible Toilet Stall:

 (1) Stall Door Landing

  (a) Strike Edge Clearance: reverse door swing to provide required pull side clearance.

  (b) Centerline: move stall partition 1 inch to provide required 18 inch dimension.

 (2) Toilet Paper Dispenser

  (a) Lower roll mounting height: Relocate the toilet paper dispenser so it is mounted underneath the grab bar with its leading edge within 12 inches on center of the front face of the toilet, or 36" maximum from the rear wall to its leading edge, whichever is closer to the rear wall, and at a minimum height of 19" to the center of the dispenser above the finished floor. The paper outlet of the dispenser shall be no lower than 15" above the finished floor.

  (b) Upper roll mounting height: eliminate or relocate the toilet paper dispenser so it is mounted underneath the grab bar with its leading edge within 12 inches on center of the front face of the toilet, or 36" maximum from the rear wall to its leading edge, whichever is closer to the rear wall, and at a minimum height of 19" on center above the finished floor.

 (3) Grab Bars:

  (a) Side Grab Bar: Provide a fully complying grab bar that is a minimum of 42" long, is located 33' above the finished floor to its centerline, positioned so it projects 24" in front

of the face of the toilet and a minimum of 54" from the rear wall, and provides knuckle space of exactly 1-1/2" and does not have any obstruction above the bar.

(4)     Sanitary seat cover dispenser: relocate this item so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the centerline of the highest operable mechanism.

3.     BARNES & NOBLE BOOKSTORE

a.     Primary Entry Doors on South Side of Building

i.     Pairs of Doors Furthest From West End of Register Counter:

(1)     Push plate: install a 10 inch high deflection shroud that surrounds the exposed bolt on one of the door bottoms, or remove the bottom security bolt entirely. Designate that door as accessible by installing an I.S.A. on both sides of that door.

(2)     Push Pressure: Adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

ii.     Pairs of Doors Furthest From West End of Register Counter:

(1)     Push plate: install a 10 inch high deflection shroud that surrounds the exposed bolt on one of the door bottoms, or remove the bottom security bolt entirely. Designate that door as accessible by installing an I.S.A. on both sides of that door.

(2)     Push pressure: Adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

iii.     Pairs of Doors Closest to East End of Register Counter

(1)     Push plate: install a 10 inch high deflection shroud that surrounds the exposed bolt on one of the door bottoms, or remove the bottom security bolt entirely. Designate that door as accessible by installing an I.S.A. on both sides of that door.

      (2)     Push pressure: Adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

   iv.     Pairs of Doors Furthest From the East End of Register Counter

      (1)     Push plate: install a 10 inch high deflection shroud that surrounds the exposed bolt on one of the door bottoms, or remove the bottom security bolt entirely. Designate that door as accessible by installing an I.S.A. on both sides of that door.

      (2)     Push pressure: Adjust the door pressure to 5 pounds or less and verify that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.

b.    Drinking Fountains:

   i.     Alcove:  install cane detection rails on both sides of drinking fountains.

c.    Wheelchair Lift Serving the East End of the Building

   i.     If lift is to be used by the public, defendant agrees to make it fully comply with current access standards.

d.    Wheelchair lift serving café:

   i.     If lift is to be used by the public, defendant agrees to make it fully comply with current access standards.

e.    Starbucks Coffee Shop:

   i.     Door to Exterior Dining Deck, if opened to public use:

      (1)     Push Plate: install a 10 inch high deflection shroud that surrounds the exposed bolt on one of the door bottoms. Designate that door as accessible by installing an I.S.A. on both sides of that door.

      (2)     Push Pressure: Adjust or replace the door closers so the maximum force required to open the doors is 5 pounds of pressure.

   ii.    If any future tenant of this space intends to open this plaza/mezzanine area to the public, Defendant agrees to make the lift inside accessible to

applicable, current standards.  Defendant also agrees to install signage to direct patrons to the accessible route via the lift.

f.    Men's Restroom

    i.    If the interior bathrooms are to be used by the public, defendants agree to make them fully comply with current access standards

g.    Women's Restroom:

    i.    If the interior bathrooms are to be used by the public, defendants agree to make them fully comply with current access standards